## MALIA JONES *v.* JAMES H. FINCH.

1. EVIDENCE: OPINIONS OF EXPERTS.—As a general rule, the opinions of a person skilled in any science, art, or trade, are admissible in evidence in relation to matters connected with his profession. See 1 Stark. Ev. (6th Am. Ed.), 69; 2 Phil. Ev. (C. & H.'s notes), 4th Am. Ed. 603; *Lyon* v. *Lyman*, 4 Conn. 55; *Hess* v. *The State*, 5 Ohio, 7; *State* v. *Tritt*, 2 Baily R. 44; *Norman* v. *Wells*, 17 Wend. 161.

2. SAME: OPINION OF EXPERTS IN DETECTING COUNTERFEIT BILLS, EVIDENCE.—The means of detecting counterfeit bank-bills by an inspection of the marks and devices used in etching and engraving such instruments, is an art; and a person skilled therein, may give in evidence his opinion in reference to the genuineness of a bank-bill, without being acquainted with the handwriting of the persons whose names appear on it as president and cashier of the bank. See *Peterborough* v. *Jaffrey*, 6 N. H. R. 464; *United States* v. *Holtsclaw*, 2 Hayw. 379; *Davis* v. *Mason*, 4 Pick. 156; *Moody* v. *Rowell*, 17 Pick. 490.

ERROR to the Circuit Court of Tippah county. Hon. John F. Cushman, judge.

*J. A. Green*, for plaintiff in error.

The only question for determination is, the admissibility of the

testimony of A. Brown. The court erred in admitting his testimony as to the genuineness of the bank-bill in dispute ; because, first, the rule of law is, that the best evidence of which the case, in its nature, is susceptible, must be produced. 1 Greenleaf, 82. The defendant in error should have had the depositions of the president and cashier, for the purpose of proving that the bank-bill was counterfeit, for that, certainly, was the best and only evidence by which that fact could have been established.

This witness could not have afforded the best evidence as to the genuineness and value of the bill in issue, when he says himself that he had never before seen a bill upon the same bank, or the signatures of the president and cashier of the bank from which the bill purports to have been issued, which last I conceive to be the criterion by which the question of value is to be determined ; for, if the president and cashier should sign and put into circulation a note absolutely counterfeit, upon their own bank, they would be liable for its redemption. Then, how could the witness, without any knowledge of the signatures of the president and cashier, testify as to the value and genuineness of the bill ? There was no evidence before the court, that the depositions of the president and cashier could not be had ; which fact, connected with the disposition of the defendant in error to make out his case with evidence purely secondary, and intrinsically weak, savors very strongly of fraud, for the prevention of which, the very rule contended for is called into requisition ; or, in the language of the text, " the rule is adopted for the prevention of fraud ; for when it is apparent that the best or better evidence is withheld, it is fair to presume that the party had some sinister motive for not producing it, and that, if offered, his design would be frustrated."

But it is insisted, that the witness was admissible as an expert. Experts are admissible to translate an unknown language, to explain terms of art, and to explain provincialisms ; but never even to decipher handwriting. *Bank of Penn.* v. *Haldeman*, 1 Penn. R. 161 ; *Jackson* v. *Phillips*, 9 Cowan, 94.

The witness stated, upon his *voir dire*, that he had had some experience in detecting bank-bills, in his ordinary course of business—merchandizing ; that he had never before seen a bill upon the same bank ; and that he knew nothing of the signatures of the president

Jones v. Finch.

and cashier: then, does he come up to the standard required by law?

An expert " is a person selected by the court, or the parties in a cause, on account of his knowledge or skill, to examine, estimate, and ascertain things, and make a report of his opinions." 1 Bouvier, 502. Experts may be called to give their opinions upon questions of science, skill, and trade. 1 Greenleaf, 440. As to experts generally, see 1 Greenleaf's Ev. 280, 440, 576–80 ; *Moody* v. *Rowell*, 17 Pick. 490 ; 2 Starkie's Ev. 375, 376. According to Lord Mansfield's definition, in 3 Douglass, 157, "Experts are persons professionally acquainted with science, or men of science." See also Smith's Leading cases, 286.

Suppose a person should get into his possession bills engraved upon the identical plates of the bank, and then should forge the signatures of the president and cashier, would a man, who had never seen the handwriting of the president and cashier, be competent to testify as to the value of the bill ? Certainly not ; for, to permit him to give his opinion, would be a reckless overthrow of the rule requiring the best evidence, and would be productive of much evil. Does the law not contemplate, by the term expert, something more satisfactory than the witness attempted to be introduced in this cause ?' If not, I conceive that litigants are at the mercy of every "lumber-room clerk," who may be permitted to give his opinion in court. Would not a clerk be far more competent to give his opinion of handwriting, by comparison of manuscripts, than in this case ; yet this cannot be done unless he has seen the party write. *Garrells* v. *Alexander*, 4 Esp. 37 ; *Pannell* v. *Ford*, 2 Starkie, 164; *Bromage* v. *Rice*, 7 Car. & P. 548; *People* v. *Spooner*, 1 Denio, 343 ; *Doe* v. *Newton*, 5 Adol. & El. 514.

*F. Anderson*, on same side.

The error assigned is, the admission of the evidence of the witness Brown, that the bank-note, which is the subject of the controversy, was counterfeit.

The competency of such evidence as this has been the subject of considerable controversy in the English and American courts, but we think that the weight both of authority and reason, is against it.

In England, in one or two cases, it seems that such testimony was admitted, probably without objection. See *Revett* v. *Braham*,

4 T. Rep. 497 ; *Rex* v. *Castor*, 4 Esp. 117.    In each of these cases, it appears that an inspector of franks was permitted to give his opinion as to whether a controverted writing was in a natural or fictitious hand ; but the practice seems to have been subsequently repudiated.    *Gurney et al.* v. *Langlands*, 7 Eng. C. L. Rep. 118.

In the case last cited, on a trial at the assizes, of an issue, from the King's Bench, to try whether a signature, was or not, genuine, a question of this kind was proposed to be asked of an inspector of franks, but it was overruled by Wood, B., who in reporting back the issue to the King's Bench, said : " When a witness has seen another write, or has, by receiving notes or letters from him, become acquainted with his handwriting, he has a ground of forming a belief as to it ; but where, as in this case, he acknowledges that he had not any previous acquaintance whatever with the handwriting of the plaintiff, he could not, as I conceived, have any foundation for his opinion or belief, whether the signature in question was genuine or an imitation : for he had never seen or had any knowledge of that of which it was supposed to be an imitation.    There is no general or known standard, by which handwriting can, by inspection only, be determined to be counterfeited, without some previous knowledge of the genuine handwriting, the handwritings of men being as various as their faces.    Opinions of skilful engineers and mariners, &c., may be given in evidence in matters depending on skill, viz., as to what effect an embankment, in a particular situation, may have upon a harbor, or whether a ship has been navigated skilfully ; because, in such cases, the witness has a knowledge of the alleged cause, and his skill enables him to form a judgment and belief of the effect.    I had never known such loose general evidence admitted, or ever offered, and it struck me that the admission of it would produce much mischief, and greatly endanger written securities."

His judgment was affirmed by the King's Bench, several of the judges holding, that if the evidence was even admissible, it ought not to have the least weight with court or jury, and Best, J., holding it to be incompetent.

In the case of *Casey* v. *Pitt*, cited in a note at page 248 of 19 Eng. Com. L. Rep., Lord Kenyon also held such evidence inadmissible ; and in the reported case, *Clermont* v. *Tullidge*, 19 Eng.

Com. L. Rep. 247, 248, on a proposition to ask a witness whether a letter, which another witness had denied to be in his, the other witness's, handwriting, was not in the same handwriting with one admitted by the first witness to have been written by him, Lord Tenterden said: "I think that question cannot be put. It was formerly held that persons conversant with handwriting could be asked, whether certain letters were genuine or not, but it has been since held that that is not evidence."

In 1 Phil. on Ev. 493, the author takes the same view of the English rule, saying: "The reasons given by Mr. Baron Wood for rejecting" (such evidence) "are stated in his report of the case of *Gurney et al.* v. *Langlands,* to the King's Bench" (which reasons we have quoted above), "and appear to be decisive on the question."

The rule of excluding such evidence seems to have been enforced in criminal cases, and there can be no distinction, or should be none, in this respect, between criminal and civil cases. 1 Phil. Ev. 225.

In reference to the American decisions, we quote from 3 Phil. on Ev. 1337, note 918: "As to handwriting, some of the American cases, in their *dicta,* at least lean toward sanctioning the admissibility of experts, or persons skilled in detecting forgeries. But most of them require that the witness, in order to be able to speak as to the handwriting of a person, should have had a previous knowledge of the general character of his handwriting, gained in some legitimate way." The cases referred to in the note, are the cases in which the question was discussed in respect to disproving the genuineness of bank-bills, and therefore involve the very question here presented. See also Notes, 913, 914, pp. 1321, 1324, 3d vol. Phil. on Ev.

Amongst the American cases, we refer especially to *The People* v. *Spooner,* 1 Denio. Rep. 344–5, in which the Supreme Court of New York, after reviewing the authorities, holds such evidence inadmissible. See also *Bank of Pennsylvania* v. *Haldeman,* 1 Penn. 161, where the same point is decided, as stated in the note above, though we have not been able to find the volume referred to.

It is clear, we think, upon a review of the authorities, that the inclination of the courts generally has been decidedly against the

competency of such evidence, while a majority of the cases abso-
lutely exclude it; and that those courts which have admitted it,
with seeming inconsistency, declare, "that it is not entitled to the
least weight by either court or jury." We had thought that the
principle on which courts went, in the admission of the opinion of
experts in matters of science and art, or at least such science
and art as the court recognized as having a substantial existence,
and founded on correct principles, was entitled to full faith and
credit, the maxim being "*cuique in sua arte credendum est.*" It
is well said by Ch. J. Bronson, in the case cited from Denio, "that
the only question is, whether the opinion of experts, having no
knowledge of handwriting, shall be received, and then wholly dis-
regarded by court and jury, or whether such evidence shall be shut
out altogether."

The principle on which the opinions of experts are admitted
is, that the law recognizes the science or art which they profess as
founded on principles, and the expert as versed in those principles
by practical experience, and therefore competent to express an
authoritative opinion. But in cases of this kind, the law does not
recognize such an art as enables persons to detect the genuineness
or falsehood of signatures and writings, without an acquaintance
with the original, since its fundamental principle is, that in order
to prove handwriting, the witness must have had a previous ac-
quaintance with it.

It appears to us that very serious consequences would flow from
abandoning, in this class of cases, the established rule, which
requires the best evidence the nature of the case admits; nor has
that rule been abandoned, by admitting third persons to disprove
the signature or supposed handwriting of one, with whose hand-
writing they have a previous acquaintance, instead of requiring the
person himself,—since even admitting the competency of a person
whose signature was in question, the law does not recognize his
evidence as of any higher grade than the testimony of others who
are familiar with it.

Our apology for so long a brief in so small a case, is to be found
in the importance and practical nature of the question involved.

The attention of the court is invited to the brief of Mr. Greer,
and the additional authorities therein cited.

*T. J.* and *F. A. R. Wharton,* and *J. W. Thompson,* for defendant in error.

The only alleged error in the ruling of the court below was in admitting the testimony of the witness Brown. The objection to his testimony is based upon the fact stated by him, that he was not acquainted with the handwriting of the president and cashier of the bank.

There was no error in admitting the testimony.

The witness was introduced as, and proved to be, an expert in detecting counterfeit bank notes; he had studied the art, as a science, and had extensive experience practically. He was positive that the note shown him was a gross counterfeit.

The rule is thus laid down: " The evidence of a witness, who from habit and practice has acquired experience and skill in judging of the genuineness of handwriting, and who states his belief that a particular writing is in an imitative style and forged, appears to be strictly admissible, although he is not acquainted with the handwriting supposed to be imitated." 2 Ph. Ev. (last ed.), 603. The text so states the doctrine. It is true, it adds, that many judges have been of opinion that little or no weight is due to such testimony. The author, however, gives it the authority of his name, and, in the note to the text, cites a long array of authorities in support of his opinion.

The doctrine of disproving handwriting, without calling the supposed writer, came under consideration in *Faber* v. *Hilliard,* 2 N. H. R. 480–1. It is there decided that it is unnecessary to call witnesses who have actually seen the writer, to disprove the signatures of the officers to a bank-note.

This subject has been most frequently considered in criminal prosecutions, in which greater rigor obtains than in civil cases, and yet in prosecutions for forgery and for passing counterfeit bills, the courts have laid down the rule as above. See *State* v. *Carr,* 5 N. H. Rep, 367; *Hess* v. *State,* 5 Hamm. (Ohio), 5, 7; 7 Ib. 116; 2 Pick. 47, 50; 9 Com. 240; Ib. 55, 60; 2 Leigh, 745, 749; Ib. 701, 706; 2 Hay. 379; 3 Hawks. 395.

In the last case this remark is made: " We are of opinion that the judgment of persons well acquainted with bank paper, is sufficient evidence to determine whether the one in question be genuine

or not." Chief Justice Marshall held the above language, according to the note, 2 Ph. Ev. 606, in a case decided by him in 1805, in the case of *United States* v. *Holtsclaw*, reported in 2 Hay. 379, decided in United States Court for North Carolina. He said: "Moreover, it is determined by the skilful whether a bill be genuine, not only by the signature, but also by the face of the bill, and by the exact conformity of the devices used for the detection of counterfeits to those in true bills." See the authorities collected in 2 Ph. Ev. 604, note 482.

HANDY, J., delivered the opinion of the court.

This action was brought by the defendant in error, to recover of the plaintiff in error the amount of a bank-note of the Bank of Hamburg, South Carolina, which the latter had passed to the former for value, and which was alleged to be counterfeit.

The only question presented in the case, is whether the testimony of one Andrew Brown, Jr., a witness introduced in behalf of the plaintiff below, was admissible. That witness, on being produced and sworn, was asked by the plaintiff to examine the bank-note in question, which was shown to him, and to state whether or not it was a counterfeit. On objection by the defendant, the witness was first interrogated as to his capacity, skill, and experience in detecting counterfeit bank-notes, and was asked to state whether or not he could detect counterfeit bank-notes; to which he replied, that he thought he could detect such as were counterfeit; that he had a good deal of experience in detecting counterfeit bank-notes, having been in mercantile business, having been frequently called on by the public having a knowledge of his experience, to determine the genuineness of such notes; and that he thought he was able to determine, by inspection, whether they were counterfeits or not; that he had studied and learned the system by which counterfeit bank-notes, it was believed, could be detected, and that he believed that the means used to determine the question, enabled him to determine with certainty in all cases of gross counterfeits. And thereupon the court permitted the question to be put to him as first proposed; and he answered, that he had experience in detecting counterfeit bank-notes, and had seen many, but never one on the Bank of Hamburg before this; that this was a gross counterfeit, of

which fact he had no doubt. Upon being asked whether he knew the signatures of the president and cashier of the bank, he answered that he did not know either of them, and had never seen either of them. He further stated that one of the evidences relied on by him in judging of such notes, was that in genuine bills the lines or marks in the fine work were parallel with each other. To the admission of·this testimony, the defendant excepted.

The question arising upon this ruling of the court is, not whether a witness, who does not know the handwriting of a party from having seen him write, or from having had correspondence with him, but is acquainted with it from having been familiar with his signature, which was treated in the course of business as genuine, as having seen many bank-bills which passed as genuine, having the names of the president and cashier upon them, which thereby became well known to the witness, is competent to prove the handwriting of such party ; but whether a witness who is skilled in the marks and characteristics of genuine bank-bills, from long experience and from having studied the modes by which counterfeit bank-bills can be detected, is competent by such knowledge and skill, to testify as to the genuineness of bank-bills which are shown to and examined by him. For this is the substance of the testimony admitted in this case.

It is a general rule, that in matters of science, trade, and art, persons of skill may give their opinions in evidence whenever the question is material to the issue. Medical men are allowed to state their opinions about a particular disease, or upon symptoms presented to them ; shipbuilders about the seaworthiness of a ship ; an artist in painting or music about matters belonging to their respective arts, upon the maxim *cuilibit in sua arte perito credendum est.* Broom's Leg. Max. 721, 722 ; 1 Stark. Evid. 69 (7th Amer. from 3d Lond. edit.). Upon a question of the genuineness of hand-. writing, it is laid down that a witness, who from habit and practice has acquired experience and skill in judging of handwriting, is a competent witness to testify to his belief that a particular writing is in an imitative style and forged, although he is not acquainted with the handwriting of the person who is alleged to have written the paper. 2 Phill. Ev. 603 (Cowen and Hill's notes), 4 Amer. edit. ; and this has been sanctioned in many cases. Without giving

our approbation to the rule, to the extent in which it is laid down, it is plain that such persons of skill and experience in judging of handwriting, are regarded as *experts*, and therefore competent to testify in such matters; and this has been held in many cases. *Lyon* v. *Lyman*, 4 Conn. 55 (N. S.); *Hess* v. *The State*, 5 Ohio, 7; *State* v. *Tutt*, 2 Bailey (S. C.), 44, 45; *Norman* v. *Wells*, 17 Wend. 161, *et seq.*; *Moody* v *Rowell*, 17 Pick. 490.

There appears to be much stronger reason, for receiving the opinions of persons who have studied and are skilled in the art of detecting counterfeit bank-bills; involving, as it does, a knowledge of the marks and devices used in etching and engraving such instruments, and the system upon which they are executed. We can well conceive that the rules observed by regular artisans in engraving such instruments, may be such as to enable one skilled in them to detect such as are counterfeits, with reasonable certainty; and, indeed, such skill appears to bear a strong analogy to that of the painter, and to be admissible upon the same reason. Besides this, a witness may be acquainted with the peculiarities of engraving and marks from the face of genuine bills of a particular bank, apart from the signatures of the officers, and thereby be enabled the more certainly to apply his knowledge of the general rules of engraving genuine bills, and to form a correct opinion as to the genuineness of a bill. These means of knowledge upon the subject appear to be amply sufficient to entitle a witness possessed of them, to testify upon the question; and this has been held in several cases. *Peterboro'* v. *Jaffray*, 6 New Hamp. Rep. 464; *United States* v. *Holtsclaw*, 2 Hayw. Rep. 379; *Davis* v. *Mason*, 4 Pick. 156; *Moody* v. *Rowell*, 17 Pick.

We therefore think that the testimony of the witness was competent.

Judgment affirmed.